# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1999V

| | |
|---|---|
| MARY YOUNG,<br><br>          Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>          Respondent. | Chief Special Master Corcoran<br><br>Filed: June 25, 2025 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Nina Ren*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DISMISSAL DECISION**[1]

On October 12, 2021, Mary Young filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, as a result of an influenza ("flu") vaccine she received on November 15, 2019. Petition at ¶ 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the foregoing reasons, I find that Petitioner has provided insufficient proof of severity of injury, as required for all Vaccine Act claims. *See* Section 11(c)(1)(D)(i).[3] Petitioner is therefore not entitled to compensation, and the matter is appropriately dismissed.

## I.   Relevant Procedural History and the Parties' Arguments

Respondent determined in the spring of 2023 that this matter was not appropriate for compensation. ECF No. 20. Respondent thereafter filed his Rule 4(c) Report defending this case on June 29, 2023. Respondent's Report, ECF No. 22. I thereafter issued an Order to Show Cause, noting that the evidence revealed significant deficiencies in Petitioner's case related to her ability to establish the statutory six-month "severity requirement." *See generally* ECF No. 23.

In response (and after receiving one extension of time, ECF No. 25), Petitioner submitted a written response brief – but *no* additional evidence bearing on the issue of severity. ECF No. 26. In her brief, she argued that she can establish severity, maintaining that she sought treatment for her left shoulder pain "through July 2021." *Id.* at 11. And when she returned to care following an 11-month gap, she "did not make any mention of any other trauma to her left arm and relates her pain directly back to her flu shot." *Id.* (citing Ex. 3 at 19; Ex. 4 at 16-19). More so, Petitioner argued that she provided a reason for her gap in treatment – the COVID-19 Pandemic caused her to deal with her pain at home. *Id.* at 11-12 (citing Ex. 6 at 1).[4]

Respondent thereafter filed his reply to Petitioner's brief in May 2024. ECF No. 28. Among other things,[5] Respondent maintained that any medical concerns Petitioner experienced in November 2019 had resolved within six months of vaccination. ECF No. 28 at 8 (citing Section 11(c)(1)(D)(i)). Respondent also relied on the existence of a substantial temporal gap in the medical records during which Petitioner did not report ongoing symptoms (despite opportunities to do so). *Id.* at 7 (citing Ex. 2 at 141-43, 149-76). And Petitioner had complaints of a different nature after the treatment gap. *Id.* at 8 (comparing Ex. 2 at 151, 162, 170; with Ex. 4 at 16-17). Finally, Respondent asserted that given the contradictions between Petitioner's affidavits and the contemporaneous

---

[3] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[4] Petitioner otherwise asserted that she could establish either a Table SIRVA claim or one of causation-in-fact. ECF No. 26 at 7-14.

[5] Respondent also argued Petitioner cannot establish a Table SIRVA, as none of her medical providers ever recorded reduced ROM deficits. ECF No. 28 at 5, n.2, 10 (internal citations omitted).

medical records, her statements cannot be relied upon for a favorable severity finding. *Id.* at 6-9 (citing Ex. 6; Ex. 2 at 149-52, 155-67, 170-76).

Petitioner filed a supplemental responsive brief in June 2024, reiterating her arguments as to severity – specifically, that her post-gap treatment records support the existence of ongoing pain during the gap in treatment. ECF No. 29 at 1-2 (citing Ex. 3 at 19). She also argued that the Vaccine Act does not require a petitioner to have experienced consistent symptoms throughout the six-month period. *Id.* at 2. The issue of severity is now ripe for adjudication.

II.     **Contemporaneous Medical Records**

Petitioner received the flu vaccine alleged as causal on November 15, 2019, while visiting her primary care provider ("PCP"). Ex. 1. Petitioner's first post-vaccination treatment event for left shoulder pain occurred on November 20, 2019, five days post vaccination, with another provider at her PCP's office. Ex. 2 at 168; Ex. 3 at 38. The chief complaint was listed as "[a]llergic [r]eaction (flu shot last Friday at ten)." Ex. 2 at 168. Petitioner reported "left arm pain following flu vaccination that she obtained [] on [] 11/15/2019." Ex. 3 at 38. She endorsed discomfort in the anterior/posterior shoulder joint region "that is exacerbated upon anterior posterior movement . . . and when lifting/raising arm." *Id.* Petitioner denied swelling and "any pain at actual puncture site of left deltoid region." *Id.*

A musculoskeletal examination revealed tenderness on palpation with anterior and posterior rotation of the left arm, but normal range of motion ("ROM"). Ex. 3 at 40. Petitioner was assessed with "shoulder joint painful on movement, left," and her PCP administered a Kenalog injection. *Id.* at 41. The PCP noted that Petitioner "reviewed all at [sic] adverse reactions to influenza vaccine including arthralgia[; Petitioner was] educated this is most likely *temporary*." *Id.* (emphasis added). The PCP also noted the Kenalog injection was administered to address Petitioner's left shoulder and back pain. *Id.* Petitioner was told to monitor her blood sugar levels following the injection and to return to the PCP's office if "any further needs are warranted." *Id.*

On December 19, 2019, Petitioner returned to her PCP (from whom she received the subject flu vaccination) for a follow-up regarding her pre-existing diabetes and bipolar disorder. Ex. 2 at 155-67. Petitioner mentioned she had "[n]ot really [been] checking sugars" and she had "been dancing a lot for exercise." *Id.* at 162. Petitioner did not report left shoulder complaints, her PCP did not perform an examination specifically of the left shoulder, and no assessment pertaining to the left shoulder was listed. *See id.* at 161-64.

Petitioner attended another regularly scheduled follow-up visit with her PCP on April 14, 2020 (via telehealth appointment). Ex. 2 at 149. (Notably, the Pandemic had started by this date). Petitioner complained of a myriad of issues but noted that she had "[n]o problems with self[-]care. Ha[d] been spending lots of time outside. Sleep is okay [and she] . . . [c]ontinues to deal with chronic low back pain with known [abnormal] imaging." *Id.* at 151. Under the "review of systems," Petitioner did not mention left shoulder complaints. *Id.* The PCP's assessment included muscle spasms – for which a muscle relaxant was prescribed. *Id.* at 152.

On October 16, 2020 – nearly 11 months after her last visit for left shoulder pain, and six months since her last visit with any caregiver – Petitioner returned to her PCP for multiple issues, including "left shoulder pain since flu vaccine last year." Ex. 2 at 141. Specifically, she reported "chronic problems since that time which she thinks was due to the vaccine." *Id.* Petitioner also stated that she "[h]ad limited movement and pain for months. This ha[d] improved from initrial [sic] but isn't normal[.]" *Id.* A physical examination revealed "[n]otable crepitus in left arm should[er] joint without any visible deformity and full ROM." *Id.* at 142. The PCP diagnosed Petitioner with "chronic left shoulder pain," and recommended Petitioner receive another annual flu vaccine,[6] referring her to an orthopedist. *Id.* at 143.

Two months later, on December 16, 2020, Petitioner saw an orthopedist for her left shoulder pain. Ex. 4 at 16. Petitioner reported the onset of her shoulder pain "has been gradual (10/2019)," and the pain was "[p]recipitated after receiving influenza vaccine 2019." *Id.* Petitioner explained the "[p]ain [had been] constant past 6 months" – or since mid-June 2020. *Id.* She noted the pain was moderate to severe, characterized as a "dull aching," and at night the pain interferes with sleep; associated features included muscle weakness, painful ROM, deceased ROM, and difficulties with activities of daily living ("ADLs"), including dressing and lifting. *Id.* Upon examination, Petitioner exhibited decreased ROM and strength, along with positive impingement signs. *Id.* at 17. Petitioner was assessed with rotator cuff impingement syndrome, chronic left shoulder pain, and shoulder weakness; Petitioner received a repeat steroid injection. *Id.* at 18.

A note from Petitioner's February 8, 2021 MRI of the left shoulder reflects that she had "worsening [left shoulder] symptoms since a year" or since approximately February 2020. Ex. 4 at 22. Petitioner attended various orthopedic follow ups for her left shoulder pain thereafter. *See,* e.g., *id.* at 13-15. She also participated in physical therapy ("PT"),

---

[6] Petitioner's vaccination record appears to show that Petitioner received a repeat vaccination *in the left deltoid* on October 16, 2020 – the same arm as alleged to be injured by the subject vaccination in this case. Ex. 1 at 1. The parties do not rely on this in their respective arguments regarding severity, so I will not base my severity determination much on this fact - but it has significance if Petitioner, in fact, received a repeat vaccination on this date in the alleged injured arm.

4

beginning on March 19, 2021. Ex. 5 at 30. The reason for the PT referral was noted as "left shoulder pain and right low back pain." *Id.* She attended nine additional sessions thereafter (through July 15, 2021), for diagnoses including "other shoulder lesions, left shoulder," impingement syndrome of the left shoulder, muscle strain, and arthropathy. *See id.* at 23-71. No additional medical records have been filed.

### III.    Witness Declaration

Only one declaration has been filed in this case – with Petitioner failing to submit *any* additional declarative evidence in support of severity in response to my Order to Show Cause. In it, Petitioner described her appointment for shoulder pain treatment on November 20, 2019, with her PCP's office, and recalls that her regular doctor was out on maternity leave, so she saw another doctor in the same practice. Ex. 6 ¶¶ 4-5. She stated that this doctor "brushed off [her] concerns and pain because she noticed [Petitioner] gesticulated a lot with [her] hands." *Id.* ¶ 5. Petitioner attested that the doctor told her the pain "could be a repetitive injury due to those motions." *Id.*

As a result of this interaction, Petitioner was "reluctant" to bring up her shoulder pain again because she "felt that [she] wasn't being heard and that [her] concerns weren't valid." Ex. 6 ¶ 6. She also attested that thereafter, due to the emergence of the COVID pandemic and "having to make life changes such as home schooling," she "dealt with the pain on [her] own via Tylenol/yoga/meditation/etc. and pushed it as far back as [she] could in [her] mind." *Id.* ¶ 7. When her pain did not resolve and "COVID seemed somewhat more manageable" she sought continued treatment for her "non-emergent" shoulder pain. *Id.* ¶ 8. As of the time of her declaration, authored on October 4, 2021, Petitioner stated that she was continuing at-home exercises "several times a week." *Id.* ¶ 9. No additional affidavit and/or witness declaration evidence has been submitted.

### IV.    Applicable Legal Standard

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][7] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special

---

[7] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

5

master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

**Analysis**

I note preliminarily that Petitioner not only had an opportunity to prepare her claim prior to filing, but was put on notice over the subsequent duration of the case that severity was an issue to be addressed. Yet even after Respondent submitted his formal position in his Rule 4(c) Report (and after issuance of my subsequent Order to Show Cause), Petitioner *has not submitted additional evidence* or established why additional time is merited to do so. Petitioner has thus now had a "full and fair opportunity" to support her position. Vaccine Rule 3(b).

There appears to be no dispute that Petitioner received the flu vaccine on November 15, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued for more than six months thereafter from the onset of

her symptoms. *See,* e.g., *Herren v. Sec'y of Health & Hum. Servs.,* No. 13-100V, 2014 WL 3889070, at *2-3 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset). Respondent has not disputed that Petitioner can establish the onset of her post-vaccination symptoms occurred within 48 hours of the subject vaccination. *See,* e.g., ECF No. 28 at 5, n.2. Thus, she would also need to establish her shoulder injury was extant as of May 17, 2020, at the latest.

The record lacks preponderant evidence in favor of that finding. Prior to the significant gap in treatment, Petitioner had only *one* visit with a treater in her PCP's office on November 20, 2019 (just *five days* post vaccination). Ex. 3 at 38. While she did receive a Kenalog injection for her left shoulder pain during this visit – a factor supporting the conclusion that Petitioner's treater expected her injury to continue for a period of time thereafter – the visit notes also reflect that the injection was administered also in treatment of Petitioner's concurrent lower back pain. *Id.* at 41. It thus is not clear that this injection was administered solely to remedy Petitioner's left shoulder symptoms going forward. In addition, the treater communicated to Petitioner that her shoulder symptoms were likely "temporary," but that she could return if "any further needs are warranted." *Id.* A lack of recommended ongoing treatment specific to the left shoulder following this injection suggests that Petitioner's treater thought her left shoulder symptoms did not require much, if any, formal additional medical treatment.

Other aspects of the record also do not corroborate allegations of ongoing pain. Petitioner continued to seek care for non-shoulder related ailments during this extensive *11-month* gap in treatment (calling into question why she did not also seek shoulder treatment). Thus, Petitioner sought treatment twice during the gap – once on December 19, 2019, and then on April 14, 2020 (via a telehealth visit). Ex. 2 at 149, 160; Ex. 3 at 23-24, 29-31. Both of these visits were notably *with her PCP*, from whom she received the subject vaccination *and* at whose office she previously sought care for alleged vaccine-related pain. The purpose of those visits was to follow up regarding her pre-existing diabetes and bipolar disorder (among other things). *See id.* Petitioner did not mention shoulder pain or related symptoms at *either* of these visits, however.

It is particularly notable that during the April 14, 2020 telehealth PCP visit, Petitioner noted she "continues to deal with chronic low back pain" but did not mention any other musculoskeletal complaints, such as the shoulder pain she alleges to have been experiencing at that time. *Compare* Ex. 3 at 24, *with* Ex. 6. This is therefore not a case where Petitioner saw specialists during the gap in treatment – in which circumstances I would not necessarily expect her to have complained of shoulder-related

7

symptoms. The visits to the same PCP who administered the vaccine, and whose office initially treated pain related to it, provided opportunities to follow up on the subject - especially if the pain was continuing throughout this time, as Petitioner alleges in her declaration. *See generally* Ex. 6.

More problematically, the medical records following the gap do not entirely support the conclusion that Petitioner had been even intermittently experiencing vaccine-associated pain. For instance, on October 16, 2020, while Petitioner complained of "left shoulder pain since flu vaccine last year[,]" and that she "[h]ad limited movement and pain for months," a physical examination revealed full ROM, and the treater even recommended a repeat vaccination – which the record suggests may have occurred. *See* Ex. 2 at 141-42; *see also* Ex. 1 at 1.[8] Petitioner's reports are inconsistent with the findings on examination and thus uncorroborated by the contemporaneous medical records here.

Additionally, the record from December 16, 2020, shows that Petitioner reported onset in "10/2019 . . . [p]recipitated after receiving [an] influenza vaccine [in] 2019. Pain constant [for] 6 months." Ex. 4 at 16. While Petitioner related her pain back to her flu vaccination during this visit, she describes both the date of her vaccine and the duration of her injury incongruously (since the subject vaccination was in fact administered in November 2019, and Petitioner's report of pain for six months as of December 2020 would support that pain as being present *since June 2020*)*.* Petitioner's reporting during this visit does not support the conclusion that she had experienced ongoing pain through *May* 2020. Thus, these post-gap records do not bulwark Petitioner's severity arguments all that much.

I also do not find that the declaration supplied by Petitioner overcomes the existing medical record discussed above, even if it merits *some* (albeit minimal) weight. For instance, Petitioner's purported explanation for the 11-month gap in care is reasonable but not entirely persuasive in light of the entire record. She maintains that she originally did not return to care because she felt her treater had previously "brushed off" her concerns and rather attributed them to gesticulating with her hands. Ex. 6 ¶¶ 5-6. But these allegations are wholly inconsistent with the medical record of the November 2019 visit. Instead of attributing Petitioner's shoulder pain to over-gesticulation, as Petitioner contends, Petitioner's treater explicitly noted that Petitioner had been educated on an "adverse reaction[] to [the] influenza vaccine." Ex. 3 at 41. Petitioner's contentions in her declaration regarding this visit, and her subsequent explanation as to why she did not continue treatment for her alleged vaccine-related shoulder pain, are inconsistent with the contemporaneous medical records.

---

[8] *See supra,* note 6.

Likewise, Petitioner's explanation that the COVID-19 Pandemic played a role in her decision to forego care for a period of time has some merit. But the Pandemic did not manifest most prominently in the U.S. until March of 2020 – approximately four months *after* Petitioner stopped seeking shoulder-related care. And Petitioner was able to attend a telehealth visit with her PCP in April 2020. Ex. 3 at 24. Again, she had an opportunity to address her shoulder concerns, even during the Pandemic, but she did not so act.

Additionally, Petitioner's declaration does not mention or address the steroid shot she received to treat her alleged vaccine-related shoulder pain on November 20, 2019. *See* Ex. 3 at 41. As I noted in my Order to Show Cause, the fact that Petitioner received a steroid shot *could* reasonably explain a temporary treatment lapse in care (i.e., if she received relief from the injection for a period of time as intended) – but it would require additional context to conclude that the steroid caused a pause in her pain. ECF No. 23 at 4. I explained the deficiency in the record created by this lack of context, and outlined ways for Petitioner to overcome it, including by describing that she received the injection, stating whether she experienced relief in her shoulder from said injection (no matter how slight), and/or how long the relief lasted before the alleged pain returned – if at all. *See id.* Such additional information could have been evidence of ongoing pain during the gap in care and up until the six-month "cut-off." Without it, however, I cannot glean the significance of Petitioner's receipt of this steroid injection – especially because the reason for this treatment was her shoulder *and* back pain. *See* Ex. 3 at 41.

Indeed, a description of pain precisely during the relevant treatment gap (including through May 17, 2020) is something that Petitioner could well have provided useful commentary upon following my Order to Show Cause. Given Petitioner's limited post-vaccination care – especially before the gap in treatment, some contextual medical explanation was needed, but she (nor any other fact witness) did not provide it. And, Petitioner's limited assertions of ongoing pain are otherwise uncorroborated, as she did not submit *any* supplemental witness declarations – even after my Order to Show Cause.

The record, therefore, does not contain sufficient evidence to establish that Petitioner suffered the residual effects of her alleged SIRVA injury beyond November 2019. And Petitioner has failed to link the pain she experienced in October 2020 or thereafter to her earlier pain and the flu vaccine she received.

## CONCLUSION

Petitioner has presented insufficient proof to establish the six-month severity requirement. Section 11(c)(1)(D). Therefore, she is ineligible to pursue compensation under the Program. In the absence of a timely-filed motion for review (see Appendix B to

...

the Rules of the Court), the Clerk of Court shall enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.